UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 10-85-GWU

MARY ALICE HOWELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary Alice Howell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post myocardial infarction, ischemic heart disease, disc herniation of the cervical spine, a bulging disc of the lumbar spine, anxiety, and depression.  (Tr. 9).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 11-17). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, and also had the following non-exertional restrictions.  She:  (1) would have all "postural considerations" rated at "occasional or better;" (2) should avoid temperature extremes and vibrations; (3) would be able to understand and remember one- and two-step tasks; (4) could sustain attention and concentration for two-hour periods in an eight-hour day; (5) could relate to coworkers and supervision in a non-public setting; and (6) could adapt to simple

changes and was able to avoid hazards in a routine work environment. (Tr. 51-2). The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 52-3).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. Finding that the factors listed by the ALJ did not reflect the evidence, the court will reverse and remand the case for further consideration.

Although the plaintiff submitted evidence from a number of treating sources reflecting treatment for heart conditions (e.g., Tr. 266-8, 303-4, 390-1), she was found to function at the cardiac Class I by treadmill. (Tr. 428-9, 468-9). This functional classification of cardiac disease is assigned to individuals who have cardiac disease but no resulting limitation of activity. American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Ed. 2001), p. 26. From a musculoskeletal standpoint, the plaintiff was treated for a disc herniation and degenerative disc disease of the cervical spine, which were established by MRI testing. (Tr. 214, 239, 262-3, 419-20). An MRI of the left shoulder was interpreted as probably representing a torn tendon. (Tr. 584). None of the physicians who treated the plaintiff for this problem, including Dr. Keith Webb (e.g., Tr. 490-3), Dr.

Phillip Tibbs (Tr. 496-7), and Dr. Keith Hall (Tr. 579-80), provided any functional restrictions.  The plaintiff did submit an extremely limiting functional capacity assessment from Dr. Ronald Mann (Tr. 567-71), but this was properly rejected by the ALJ because the plaintiff stated that Dr. Mann was not a treating source (Tr. 322-3), and the restrictions were not accompanied by any objective findings and thus cannot even be given the weight afforded to a one-time examiner.

      The ALJ specifically stated that he was accepting the functional capacity assessments of state agency reviewing physicians.  (Tr. 15).  These two sources reviewed a portion of the record and limited the plaintiff to light level exertion, with occasional stooping, crouching, crawling, and occasional climbing of ladders, ropes, and scaffolds, precluded the plaintiff from concentrated exposure to extremes of cold and heat, to fumes, odors, dusts, gases, and poor ventilation, and, significantly, precluded her from frequent overhead reaching.  (Tr. 500-06, 554-60).

      Therefore, the evidence is uncontradicted evidence that the plaintiff had overhead reaching restrictions.  The ALJ also explicitly accepted reaching restrictions "in all directions" (Tr. 15) in the hearing decision, but did not list any such restriction in his hypothetical question at the administrative hearing (Tr. 51-2).  A limited ability to reach is clearly considered vocationally significant. Social Security Ruling (SSR) 83-14 provides that " . . . at all exertional levels, a person must have certain use of the arms and head [sic] to grasp, hold, turn, raise, and lower objects."

SSR 83-14 at *2. Since this factor was not included in the hypothetical question, the reliability of the VE testimony is called into question. The court notes that, although the VE did not provide specific citations to the <u>Dictionary of Occupational Titles</u> (DOT), it appears that at least some of the jobs he had provided in answer to the hypothetical question require reaching. For instance, the job of laundry classifier, DOT 361.687-014, is said to require frequent reaching, i.e., from one-third to two-thirds of the time.

    The decision will be remanded for further consideration.

    This the 1st day of February, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**